In the
UNITED STATES COURT OF APPEALS
For the Eighth Circuit

No. 22-2980

Criminal

UNITED STATES OF AMERICA,

Appellee,

v.

AARON RHY BROUSSARD,

Appellant.

Appeal from the United States District Court for the
District of Minnesota

REPLY BRIEF OF APPELLANT

ROBERT MEYERS
Assistant Federal Defender
U.S. Courthouse, Suite 107
300 South Fourth Street
Minneapolis, MN  55415

Attorney for the Appellant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

ARGUMENT:

1. Aaron Broussard did object to allowing *any* spark-of-life evidence in, and this Court should therefore review his claims on appeal under the normal standard rather than under the plain-error standard..........................................1

2. Admitting the spark-of-life evidence was error, and the government cannot prove that this error was harmless ................................................................4

CONCLUSION ...................................................................................................9

Certificate of Compliance and of Virus Free Electronic Brief
Certificate of Service

# TABLE OF AUTHORITIES

**CASES:** **Page**

*United States v. Bell*, 761 F.3d 900 (8th Cir. 2014) .................................................. 8-9

*United States v. Olano*, 507 U.S. 725(1993) ........................................................ 3-4

*United States v. West*, 829 F.3d 1013 (8th Cir. 2016) ............................................ 3-4

**STATUTES:**

18 U.S.C. § 1591 ..................................................................................................9

# ARGUMENT

1. **Aaron Broussard did object to allowing *any* spark-of-life evidence in, and this Court should therefore review his claims on appeal under the normal standard rather than under the plain-error standard.**

Broussard filed a pro se motion in limine seeking to prevent the government from offering evidence "solely presented to invoke sentiment" on the grounds that the evidence "would be completely irrelevant" and unfairly prejudicial. (R. Doc. 132, at 1-2.) Both the government and the district court construed this motion in limine as seeking to preclude the government from presenting "spark of life" evidence. (R. Doc. 166, at 8-9.) The court denied the motion. (*Id.*)

On the first day of trial, Broussard's attorney engaged in an extensive colloquy with the district court about this motion in limine and the court's ruling on it: "I just want to make sure I'm understanding the Court's ruling." (TT. at 16.) Counsel related that "Broussard moved to exclude *any* testimony from victims' family that essentially is not related to their death but related to them being once live human beings, the traditional Minnesota state court spark of life kind of testimony." (TT. at 16-17 (emphasis added).) So in defense counsel's view, Broussard had moved to exclude *any* of this evidence, which is another way of saying that he asked the Court to exclude it all and preclude the government from inquiring into these subjects. The first part of defense counsel's next sentence

1

Appellate Case: 22-2980    Page: 4    Date Filed: 07/13/2023 Entry ID: 5295373

expressed his understanding that the district court had denied that request: "And *that* this Court denied . . . ." (TT. at 17.) The context of defense counsel's statement makes clear that the word *that* refers to the argument that the government should be precluded from eliciting *any* such evidence. (*See* TT. at 16-17.) Defense counsel continued, making it clear that in his view, the court had denied the request to exclude all of this evidence, but that the court would allow defense to make specific objections if he deemed it unfairly prejudicial: "And that this Court denied and is going to allow the Government to introduce spark-of-life testimony, but allowing Mr. Broussard to preserve if he deemed or if now I deem it to be too prejudicial to make an argument." (TT. at 17.) The district court confirmed this understanding, responding, "Yes." (*Id.*)

So Broussard had moved to bar the government from introducing any of this evidence. The court denied that motion, but he could make Rule 403 type objections asserting that specific evidence was unfairly prejudicial. Broussard acknowledges that no specific Rule 403 objections were made (more on that later), but the crucial point for error preservation is that he attempted to exclude all of this evidence and that global objection was denied.

Defense counsel made the distinction that Broussard had objected to *any* of this evidence coming in and had preserved that argument even more clear in his response following the Court's "Yes": "I wanted the record to confirm that had I

2

originally been making this motion, I *too* would have made an objection to excluding—asking the Court to exclude *all* spark of life *as not relevant*, not supported by Eighth Circuit precedent. *And I just wanted that to be preserved*." (TT. 17 (emphasis added).) He then queried the court again to make sure that that objection was preserved: "Am I tracking with what the Court did and what the state of the evidence is on that issue?" (*Id.*) The court then stated how it interpreted Broussard's pro se motion: "I took Mr. Broussard's motion in limine to ask me to *exclude it all. And the Court denied that* but will allow you, Mr. Morrison, to object on 403 grounds if it's in your view unduly prejudicial." (*Id.* (emphasis added).) So contrary to the government's argument, Broussard, his attorney, and the Court understood Broussard was asking that all of the evidence be excluded. Broussard's attorney said he would have asked for the same thing. And the court made it crystal clear that it denied the request to exclude it all.

Broussard's appeal urges this Court to conclude that allowing spark-of-life evidence was wrong, and that by allowing this irrelevant and extremely prejudicial evidence into Broussard's trial, the district court deprived him of a fair trial. (Def.'s Br. at 5.) The government cannot prove that this error was harmless, as is their burden to do. *United States v. Olano*, 507 U.S. 725, 734 (1993). That is, they cannot negate the conclusion that this evidence had "more than a slight influence on the verdict." *United States v. West*, 829 F.3d 1013, 1017 (8th Cir. 2016).

3

Broussard's arguments on appeal challenging this decision of the district court were properly preserved and are properly raised on appeal. The plain-error doctrine does not apply.

**2. Admitting the spark-of-life evidence was error, and the government cannot prove that this error was harmless.**

As relayed above, when a claim of error has been properly preserved by a defendant, it is the government's burden to prove that the error was harmless (i.e., that it did not affect Broussard's substantial rights). *Olano*, 507 U.S. at 734-35. If the error had more than a slight influence on the verdict, reversal is warranted. *West*, 829 F.3d 1017.

The evidence admitted under the spark-of-life doctrine in Broussard's case had more than a slight influence on the verdict. Extremely prejudicial information to Broussard about the victims were admitted that had no relevance to the issues in the case. (*See* Def.'s Br. at 11-22.) Some examples (a more fulsome account is in the opening brief):

- J.B.'s wife testified that J.B. was doing his PH.D. program at the University of Minnesota, "and they loved him so much because he was so brilliant, and they hired him here at the U. And if you know anything about academia, you know it's very hard to get on where you actually study because they only want the best." (TT. at 154.) He "travelled extensively to Italy, Kenya, Tanzania, South Africa, Australia, Philippines, Mexico, et cetera, for work to do his research." (*Id.*) This information is highly prejudicial and utterly irrelevant. Learning that J.B. got a very hard academic position to get, but that he got it because he was

4

the best has nothing to do with whether he is healthy, and it is not material to any issue in the prosecution of Broussard. The government essentially argues that information like this that shows that someone's life is *vibrant*—an extremely vague and subjective term—is relevant because if someone's life is going well, then they are less likely to seek out opioids. (Gov. Br. at 38.) But extending this logic leads to absurdities: if this logic is accepted, then anything good that has happened in the life of a deceased victim in a case like this is relevant. Say someone got an "A" on a final. The government's logic would say that is relevant because it shows that they were less likely to seek out fentanyl from other sources and instead died because of drugs distributed by Broussard. That's absurd.

- S.B.'s younger brother testified that S.B. "was a good role model." (TT. at 568.) S.B. spoke with his younger brother often, and "he would always be there to kind of help me through my stressful work." (TT. at 569.) He was "[v]ery well liked. He had a lot of friends and a great sense of humor." (*Id.*) Again, prejudicial, and utterly irrelevant.

- P.R.'s mom testified that P.R. "worked for the State of Wisconsin for the Department of Tourism. He could tell you everything about Wisconsin that there was to tell. He just took great pride. . . . [I]f you had to write down what you wanted in a son, he was it. He was a guitar player, he was a poet, he travelled." (TT. at 617.) He called his mom at least twice a week. He "collected coins. He was zany. He could make you laugh until you cried. He loved the state. He just – we miss him very much. He was what I would call a Renaissance man. He just knew a lot about a lot and he was willing to share it." (*Id.*) Again, prejudicial and irrelevant.

- M.W.'s fiancé testified that M.W. was fun, spontaneous, and a "goofball." (T. at 666.) "He'd sing weird songs in the car." (*Id.*) He'd randomly take his fiancé to the health food store to buy candy, saying, "Okay, we're getting candy today." (TT. at 668.) Jurors learned about his larger work ambitions: "he was trying to start up his own company doing software development with a friend of his at the time." (TT. at 667.) She also elaborated on why she didn't want to tell M.W.'s mom that her son was dead: ""He was an only child and I knew that they had tried really hard to have a child. His mom had told me a ton of times about how

Appellate Case: 22-2980    Page: 8    Date Filed: 07/13/2023 Entry ID: 5295373

much she had prayed for him and how he had almost died as a baby and she left it to God, and so I did not want to be the person that crushed her." (TT. at 673.) When the fire chief told M.W.'s mom, she "looked up at the sky and wailed. Not even words, just like screamed. . . . [T]hat's exactly why I didn't want to tell her because I knew it was really going to break her." (*Id.*) Prejudicial and irrelevant.

- S.F.'s mother recounted a poignant story to expand on his connection with animals: he was "working with a friend who had rescue ponies" from Canada. (*Id.*) S.F. "was the one person that was able to go into the ring with those wild ponies and put the medicine on their hooves because he was so kind, so humble." (*Id.*) He was also "brilliant." (TT. 809.) He won prizes in math and science. (TT. at 809-10.) The "Duke Talent Identification Program" identified him "as one of the top kids in the country. At that point when he was in seventh grade he had nearly a perfect SAT score." (TT. at 810.) He continued to excel at Georgia Tech. "One of his professors talked about how he in his 45 years of teaching had never had a student quite like him because he loved learning and had come to his graduate seminar even though he [wasn't] registered for it just because he loved it, loved learning about physics. And so a very brilliant mind but very, very humble. No one realized the talent he had because he was so humble and kind." (TT. at 810.) Prejudicial and irrelevant.

- Testimony about A.L. was particularly problematic. Jurors heard from A.L.'s best friend that A.L. "was beautiful. She was a big Star Wars nerd. She loved Harry Potter. That's how her and I bonded." (TT. at 892.) She recounted the first night she met A.L. She was having "an especially rough evening taking care of a patient and she danced over to me in the most awkward way possible to try to get me to laugh to make my mind off of how terrible my night was and was going to continue to be. If you can lighten up the mood a little bit, she did it." (*Id.*) Jurors learned that A.L. was caring for everyone, not just her colleagues. "She dedicated her life to being a nurse and to taking care of sick people and she did it pretty young." (*Id.* at 892-93.) She was also creative in how she tried to lift people's spirits. "She had a patient she took care of who was very sick and had multiple rounds of chemo and radiation and spirits were pretty low. So [A.L.] took . . . metal pushpins and she put them at the bottom of her shoes, . . . and she tap-danced into the room for him just to make him

6

Appellate Case: 22-2980    Page: 9    Date Filed: 07/13/2023 Entry ID: 5295373

smile and to lighten the mood a little bit and to make him forget even for a minute how difficult what he was going through was. She was an amazing person and she was my best friend." (*Id.* at 893.) These stories about A.L. are powerful and evocative. They tug on the listener's heart strings. And their emotional impact is extremely prejudicial because these stories are utterly irrelevant to the issues in Broussard's trial.

- D.F.'s girlfriend testified that D.F. "was literally the best friend that anybody could ask for. The friends that we spent the most time with were his friends . . . from childhood and he just all around was outgoing and caring and pretty much liked everybody." (TT. at 1149.) He was a great dad too: ""When our son came along he changed a little. He just became an even bigger person and it was almost like Alex gave him another thing to do with his time, another way to show that he could accomplish anything. Alex was just like his, I don't know, his mini-me. They would smile the same way. They made the same faces. Same sense of humor. Same kind of messes. They just – they were – he was a great dad." (TT. at 1149-50.) Utterly irrelevant and prejudicial.

This evidence should not have been admitted. The district court should have excluded the spark-of-life evidence precisely because it was irrelevant and unfairly prejudicial in the extreme.

The government contends that any unfair prejudice was mitigated by the district court's instruction to "not allow sympathy or prejudice to influence you. The law demands of you a just verdict unaffected by anything except the evidence, your common sense and the law as I give it to you." (Gov. Br. at 25-26 (quoting TT. 1476); *accord* Gov. Br. at 28, 50.) But this instruction doesn't mitigate any prejudice because it instructs the jury that *the evidence* is one of the three things the jury can consider, and the district court allowed this evidence to come in. So

7

from the perspective of the jury, this evidence that was admitted was something that they could consider, and the only impact of this evidence was precisely to motivate the jury to decide the case on an improper emotional basis.

Ignoring Broussard's clearly preserved attempt to exclude any of this evidence, the government harps on Broussard's failure to object under Rule 403 to this evidence. Broussard should not have had to object to specific spark-of-life evidence because it should have been excluded in toto. If Broussard's attorney had objected again and again to all the improper testimony about what great people the victims were, the jury would have seen Broussard and his attorney as attempting to silence distraught witnesses who were rightly deeply grieved that their loved ones had died. A grief that is justifiable and understandable whether Broussard was the cause of the deaths or not. That places Broussard in an untenable position, which is precisely why the government should not have been allowed to go into any of this evidence in the first place.

The government argues that *United States v. Bell*, 761 F.3d 900 (8th Cir. 2014) supports the district court's decision to allow the spark-of-life testimony into evidence. (Gov. Br. at 39.) Not so. *Bell* is distinguishable. When *Bell* was decided, the United States Supreme Court had already ruled that "[v]ictim vulnerability is relevant to whether a victim was coerced." *Bell*, 761 F.3d at 913 (citing *United States v. Kozminski*, 487 U.S. 931, 952 (1988)). Moreover, the definition section of

8

one of the statutes that Bell was convicted under—18 U.S.C. § 1591(e)(4)—defined "serious harm" as any harm "that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person *of the same background and in the same circumstances* to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." *See Bell*, 761 F.3d at 913 (emphasis in original). In other words, the very statute that Bell was convicted under made the vulnerability of the victim a relevant consideration through the statutory text, and the Supreme Court had explicitly held—unsurprisingly—that victim vulnerability was relevant to whether someone was coerced. There is no comparable language that the government can point to in Broussard's prosecution. Learning that a victim was a great dad, or brilliant, or that they would modify their shoes to do a tap dance routine to make a very sick patient smile—none of this is relevant to Broussard's case.

## CONCLUSION

The spark-of-life evidence admitted against Broussard was extremely prejudicial and irrelevant. The district court erred in allowing the government to introduce this evidence over the objections of Broussard acting pro se and, later, his attorney. Broussard urges this Court to reverse his conviction and remand for a new trial so that he can be prosecuted fairly.

9

Dated: July 12, 2023               Respectfully submitted,


                                   *s/ Robert Meyers*
                                   _____
                                   ROBERT MEYERS
                                   Assistant Federal Defender
                                   District of Minnesota

                                   U.S. Courthouse, Suite 107
                                   300 South Fourth Street
                                   Minneapolis, MN  55415
                                   612-664-5858

                                   Attorney for the Appellant

10

In the
UNITED STATES COURT OF APPEALS
For the Eighth Circuit

| UNITED STATES OF AMERICA, | ) | Appeal No. 22-2980 |
|---|---|---|
| v.        Appellee, | ) ) ) | |
| AARON RHY BROUSSARD, | ) ) | **CERTIFICATE OF COMPLIANCE AND OF VIRUS FREE ELECTRONIC BRIEF** |
|        Appellant. | ) ) | |

I hereby certify that the Brief of Appellant filed in contains 2,787 words, excluding the table of contents, table of citations, and certificates of counsel and service, as counted by the word-processing system Microsoft Word 2016 – Times New Roman font size [14] used to generate the brief. The brief otherwise complies with the type-volume limitations and typeface requirements set forth in F.R.A.P. 32(a)(7)(B) and (C) and Eighth Circuit Rule 28A(c).

I also certify that the electronic brief has been scanned for viruses and is virus free.

Dated: July 12, 2023                                     Respectfully submitted,

*s/ Robert Meyers*
_____
ROBERT MEYERS
Assistant Federal Defender
District of Minnesota
U.S. Courthouse, Suite 107
300 South Fourth Street
Minneapolis, MN  55415
612-664-5858

Attorney for the Appellant

11

Appellate Case: 22-2980     Page: 14     Date Filed: 07/13/2023 Entry ID: 5295373

In the
UNITED STATES COURT OF APPEALS
For the Eighth Circuit

| | |
|---|---|
| United States of America, | Appeal No. 22-2980 |
| v.   Appellee, | **CERTIFICATE OF SERVICE** |
| Aaron Rhy Broussard, | |
| Appellant. | |

The undersigned hereby certifies that she is an employee of the Office of the Federal Defender for the District of Minnesota and that on July 12, 2023 she served the following documents electronically through CM/ECF to the below-listed party:

    A.    Reply Brief of Appellant;
    B.    Certificate of Compliance (bound in brief).

Nathan Nelson, AUSA
Aaron Broussard

*s/ Sandra L. Seim*